## STEARNS v. UNITED STATES.

The authority of the Mexican governors to make alienations of the public domain within the limits of California, ceased July 7th, 1846. Grants made after that date are void. A grant so made, though antedated, was accordingly in this case held null.

APPEAL from the District Court for the Northern District of California. The case being one of fact merely.

*Messrs. Carlisle and Cushing, for the appellant; Mr. Stanbery, A. G., and Mr. Browning, contra.*

Mr. Justice SWAYNE delivered the opinion of the court; stating the case.

This case was instituted originally before the "Board of Commissioners to ascertain and settle Private land Claims in the State of California." The decision of the board was adverse to the claim. The case was thereupon removed, pursuant to law, to the District Court of the United States for the Northern District of California. The decree there also was adverse, and the claimant has brought the case before this court by appeal.

Two objections were taken in the argument at the bar in behalf of the United States.

First. That the papers upon which the claim rests, were antedated, and were, in fact, executed after the 7th of July, 1846; and,

Second. That the boundaries specified were so indefinite, that they render the claim void for uncertainty.

The paper title produced by the claimant consists of a grant by Pio Pico to Joseph Andrade, dated May 6th, 1846, and the expediente, found in the archives. The latter is made up of the petition of Andrade, dated May 4th, 1846, a marginal order by the governor, dated May 5th, 1846, directing the title to issue, and the borrador of the titulo issued to the interested party. Andrade transferred his claim to Stearns, the claimant and appellant, on the 9th of August, 1846. The

petition, marginal order, and concession, all bear date at Los Angeles. The petition is in the handwriting of Vicente Gomez, signed by Andrade, and witnessed by Cota and Enrigues. The concession is in the handwriting of Benito Diaz, and signed by Pico as governor, and Jose Matias Moreno as secretary.

The conquest of Upper California by the arms of the United States is regarded as having become complete on the 7th of July, 1846. Monterey was captured on that day. They then held military possession of a large part of the country. The Mexican forces were in full retreat to Lower California. But a few weeks elapsed until the surrender of Los Angeles, and the establishment of a territorial government by the invaders. The 7th of July has been fixed upon as the point of time at which terminated the authority of the Mexican governor to make alienations of the public domain within the conquered territory. All grants made after that time are void.*

The forces under General Castro fell back from Monterey on the 7th of July, and reached Los Angeles the latter part of that month. Andrade, Vicente Gomez, and Benito Diaz, were all soldiers in his army, and reached Los Angeles with the rest of the troops.

The counsel for the United States insist that the papers were prepared at this time, and not at the prior times when they bear date.

All the parties whose writing or signatures appear in them were at Los Angeles the last of July. This fact is too clear for controversy, and there is none upon the subject. Were they there on the 4th, 5th, and 6th days of the preceding month of May? This inquiry is the hinge of the controversy between the parties as to this part of the case.

Pico, the governor, and Moreno, the secretary, testify that the dates are correct, but it is admitted that their characters are so deeply affected by fraud and perjury in other cases that no weight can safely be given to their testimony. It

---

* United States v. Pico, 23 Howard, 326; Same v. Yorba, 1 Wallace, 422.

does not appear that Andrade was examined as a witness. After reading carefully the testimony of Ambrosio Gomez, Chaves, Montenegro, De la Guerra, and Padilla, it is difficult to resist the conclusion that he was in Monterey and not at Los Angeles upon the days when the papers bear date. This conviction is fixed in our minds. The testimony of Cota and Serrano, taken by the claimant, is insufficient to remove it.

Vicente Gomez says in his deposition that the date of the petition is "surely" correct; but he says further that he went from Monterey to Los Angeles with the army of General Castro; that he wrote the petition at Los Angeles upon that occasion, and that he was not there at any other time during the year 1846. The fact last mentioned, if true, is conclusive. But the character of this witness is admitted to be upon a level with those of Pico and Moreno. His testimony, therefore, needs corroboration to entitle it to belief. This the United States have supplied by the monthly custom-house balance-sheet, in the handwriting of Gomez, and approved by Manuel Castro, dated at Monterey, May 1st, 1846, produced from the Spanish archives, and by the deposition of his brother, Ambrosio Gomez, of Castro, of De la Guerra, and of Montenegro. This testimony, without that of Vicente Gomez, and indeed in contradiction to it, would be sufficient to establish the fact that he was at Monterey, and could not have been at Los Angeles upon the days of May in question. This point seemed hardly to be controverted in the argument for the claimant. The proof is conclusive. Benito Diaz testifies that the concession is in his handwriting, that it was not written at its date, and that it was written at Los Angeles in July or August, after his arrival there with General Castro. His character is subject to the same infirmity as that of Gomez, and his testimony equally requires support from other sources. The custom-house exhibits produced and identified by Hopkins, and the testimony of De la Guerra, Chaves, Pinto, Fernandez, and Rodrigues, leave no room for doubt that he was not at Los Angeles in the early part of May. He was clearly then at

Monterey, and in the performance of his duties there as an employé in the custom-house.

The explanations submitted by the counsel for the claimant are ingenious and plausible, but neither they nor the testimony adduced by the claimant are sufficient to countervail the weight of the evidence to which we have referred.

There was no informe and no diseno. None were submitted when the concession was applied for. The petition was not presented through the prefect. The latter was required by the established orders both of Alvarado and Pico, upon the subject. It does not appear that judicial possession was ever given or attempted to be given. On the 8th of May, 1846, forty-five expedientes were sent to the departmental assembly for approval. The one in question in this case was not among them. If then in existence, why was it not transmitted with the others? The omission is unaccounted for.

Stearns lived in California before and at the time of the conquest. In the spring of 1847, Col. J. D. Stevenson, an officer of the United States, was placed in command of the southern military district of California, and charged particularly with the duty of investigating the land grants which had been made by the Mexican authorities within the limits of his command. He says: " Soon after I got my district in order I began to make inquiries as to who were the civil officers under Pico, and learned from A. Stearns and others, that he (Stearns) was either the prefect or sub-prefect, and an intimate and confidential friend of Pico, and from him and others I learned that grants were made after it was known that the Americans had taken possession of California, which were antedated, and especially those made in this section of country from San Jose this way, and that a very large portion of them were signed by Pico on the day and night preceding his start for Mexico, which was about the 8th or 9th August, 1846; Stearns told me that he was present on the day and night referred to, especially the night those grants were executed, and that Pico left him (Stearns) in charge as next officer in command. These grants were

frequently the subject of conversation; and on one occasion a party, to whom a valuable grant was made, confessed to me that the grant was executed that night, and he knew nothing of it until he was sent for to accept the grant. I availed myself of every opportunity to obtain information about these grants, both by conversation and otherwise." The credibility of this witness, and the truth of his statements, are undisputed.

It has been pressed upon our attention with zeal and ability that it could not have been known by the Mexican authorities, even as late as the 9th of August, that the country would be held permanently by the United States, and that hence there was no inducement to antedate the papers in the case before us. That like papers belonging to other expedientes were antedated about that time cannot be denied. The reasons and object in all the cases were doubtless the same. It is frequently difficult to unveil the heart and find the motive which animated the guilty act. Where the guilt is doubtful, the inquiry is important, and the result may be decisive. Where the guilt is otherwise clear, the inquiry is of no moment. Whatever the result, it cannot affect the grasp which the previous conviction holds upon the mind. The state of the evidence before us presents a case of the latter character.

But it is not difficult to imagine an adequate motive for the imputed fraud. The United States were substantially in possession of the country. The military power of their adversary was destroyed. The indications were unmistakable, that it was their intention to appropriate and absorb the country. If the dominion of Mexico were not to be restored, the earlier her grants, the more likely they were to be sustained by the succeeding government. It could not be expected that those would be recognized which were made after her authority was overthrown. The antedated grants cost her nothing. Her officers gave only what was already lost, and thereby rewarded her friends and injured her enemy.

Our conclusion upon this branch of the case renders it unnecessary to consider the subject of the boundaries.

The decree of the Circuit Court is

AFFIRMED.